UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| MICHAEL R. FOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| CSX TRANSPORTATION, INC., | ) | Civil No. 09-55-GFVT |
| | ) | |
| Defendant/Third Party Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| ICG HAZARD, LLC, | ) | |
| | ) | |
| Third Party Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is currently before the Court on the cross-motions for summary judgment filed by Third Party Plaintiff, CSX Transportation, Inc., and Third Party Defendant, ICG Hazard, LLC. [*See* R. 30, 31.] The parties have filed responses [*see* R. 34, 35] and replies [*see* R. 36, 37] to the cross-motions. For the reasons set forth below, and pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment in favor of CSX and deny ICG's motion for summary judgment.

**I.**

The basic facts of the case are straightforward and essentially undisputed. Michael R. Fox worked for CSX as a train conductor. On August 22, 2007, he and his crew traveled to ICG

Hazard[1] to load approximately one hundred empty coal cars with coal. During the loading process, Fox dismounted the train to uncouple coal cars from the locomotive as part of a switching maneuver. He subsequently fell as he walked along the walkway adjacent to the track. According to Fox, he became entangled in kudzu vines which had grown over the walkway and even onto the track. Fox allegedly tripped in those vines and then fell against the steps of the train, injuring his neck and shoulder.

Fox later filed suit against CSX, alleging negligence under the Federal Employees Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, for failing to provide him with a safe workplace. He also sued for strict liability under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101, *et seq.*, for failing to control vegetation in the railroad bed adjacent to the track. *See also* 49 CFR Part 213.37.

CSX, in turn, filed a third party complaint against ICG claiming indemnity or contribution under a Mine Track Agreement with Aceco, Inc. (ICG's predecessor in interest), dated December 11, 1981. The Track Agreement states, in pertinent part:

> 9. The Industry [ICG] agrees . . . to exercise reasonable care to keep the clearance area, and the environs thereof which the Railroad's [CSX's] train-service employees may reasonably be expected to use in serving the Industry, free of obstruction that may endanger the safety of the Railroad's employees or interfere with the safe operation of engines or cars. Knowledge of or notice to the Railroad of a breach of the foregoing covenants and its continued operation of the trackage thereafter shall not constitute a waiver of either of them. The Industry agrees to indemnify and hold harmless the Railroad from and against any and all claims for loss of or damage to property or injury to person (including death) resulting from any failure of the Industry to perform or abide by either of the foregoing covenants.

---

[1]Although Fox describes the location as Ace Coal Mine, the parties agree that ICG Hazard owns the property at issue and have filed a stipulation to that effect in the record. [*See* R. 25.]

* * * * *

> 11. The Industry also agrees to indemnify and hold harmless the Railroad from and against any and all claims for loss, damage, injury or death to the person or property of the parties hereto, their officers, agents and employees, and to the person or property of any other person or corporation, while on or about said trackage, resulting from any wrongful act or omission of the Industry, its officers, agents or employees. If any claim or liability shall arise from the joint or concurring negligence of both parties hereto, their officers, agents or employees, it shall be borne by the parties equally.

[R. 31, Ex. A.]

Based on the Track Agreement, CSX claims that it is entitled to indemnity or contribution from ICG. ICG disputes that claim, and the third party litigants have filed cross-motions for summary judgment. [*See* R. 30, 31.] Those motions, fully briefed, are ready for review.

## II.

Federal Rule of Civil Procedure 56(c) provides that judgment for the moving party is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also Browning v. Dep't of Army*, 436 F.3d 692, 695 (6th Cir. 2006). While all inferences are drawn in favor of the non-moving party, that party still must present some affirmative evidence supporting its position to defeat an otherwise appropriate motion for summary judgment. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986) (non-movant must "do more than simply show there is some metaphysical doubt as to the material facts") (citations omitted); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-325 (1986). Stated alternatively, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;

3

there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

In this case, the existence and validity of the Track Agreement is not at issue. CSX seeks to enforce the Agreement, which, it contends, requires ICG to provide contribution and/or indemnification if CSX is found liable to Fox as a result of his alleged fall and resulting injuries. ICG does not dispute the existence of the Track Agreement and in fact concedes that it is the proper party to that Agreement. [*See* R. 25.] ICG does however contest the applicability and enforceability of the Track Agreement. For purposes of the instant motions, the parties have accepted Fox's allegations as true. In other words, CSX and ICG are operating under the assumption that there was an overgrowth of vegetation on the walkway adjacent to the track in which Fox tripped and fell and was injured.

Under FELA, CSX "has the nondelegable duty to provide an employee with a safe place to work." *Parsons v. Sorg Paper Co.*, 942 F.2d 1048, 1050 (6th Cir. 1991) (quoting *Schiller v. Penn Cent. Transp. Co.*, 509 F.2d 263, 269 (6th Cir. 1975)). While CSX may not evade its nondelegable duty, courts have recognized that through indemnification provisions railroads may seek contribution from third party industries. *Id.* (citing *Burlington N., Inc. v. Hughes Bros., Inc.*, 671 F.2d 279 (8th Cir. 1982)). The parties correctly note that Kentucky law controls, and such contracts have generally been held valid and enforceable in Kentucky. *See, e.g.*, *Fosson v. Ashland Oil & Ref. Co.*, 309 S.W.2d 176, 178 (Ky. 1957).

ICG contends, however, that the Track Agreement in this case is unenforceable. Central to ICG's summary judgment motion is its argument that common law indemnity standards prevent CSX from recovering indemnification and/or contribution. Common law indemnity

4

arises where "one of two parties does an act or creates a hazard and the other, while not concurrently joining in the act, is nevertheless, thereby exposed to liability." *ARA Servs., Inc. v. Pineville Community Hosp.*, 2 S.W.3d 104, 106 (Ky. Ct. App. 1999) (citation omitted). According to ICG, Kentucky law precludes indemnification of a party who was actively negligent. Because CSX was aware of the overgrowth, ICG argues, CSX was actively negligent and therefore is not entitled to indemnity. In support of this argument, ICG cites several cases which distinguish between active and passive negligence. *See, e.g.*, *Brown Hotel v. Pittsburgh Fuel Co.*, 224 S.W.2d 165 (1949); *Lexington Country Club v. Stevenson, Ky.*, 390 S.W.2d 137, 143 (1965).

For example, in *Brown Hotel*, the hotel was found liable for injuries sustained by a delivery man when he fell through an unsecured manhole cover. The court found that the fuel company's employee was negligent in failing to replace a lid over a hole in the sidewalk after a coal delivery. The court deemed the Brown Hotel passively negligent for failing to check to see if the area was secured following the delivery. *Brown Hotel*, 224 S.W.2d at 167. Extrapolating from this distinction, ICG argues that CSX was not passively negligent for simply failing "to perform some legal duty of inspection and remedying the hazard . . . ." *Id.* Instead, ICG maintains that CSX inspected the premises many times and had equal knowledge of the condition of the track. That knowledge, according to ICG, makes CSX actively negligent and precludes its ability to obtain indemnification.

But distinctions based on active or passive negligence have been criticized by the Kentucky Supreme Court. In *Crime Fighters Patrol v. Hines, Ky.*, 740 S.W.2d 936 (1987), that court noted that the difficulty in applying the principle enunciated in *Brown Hotel* "stems from a

5

mistaken analytical approach, proceeding from labels, or pigeonholes, rather than from the underlying equitable principles and the operative facts behind those labels." *Id.* at 938. The Kentucky Supreme Court continued, noting that the problem with classifications such as affirmative/negative, active/passive, misfeasance/nonfeasance, omission/commission, negligent/intentional, primary/secondary is that they are "not in themselves definitive, but only conclusions which should be arrived at after analyzing the facts, and not intuitively." *Id. See also Rice v. Cincinnati, New Orleans & Pacific Railway Co.*, 920 F. Supp. 732, 736 (E.D. Ky. 1996) (noting that the active or passive negligence approach to common law indemnity issues has been rejected by the Kentucky Supreme Court in favor of a more policy oriented analysis).

Perhaps more important than the problem with applying such labels is the fact that these cases deal only with claims for common law indemnity. They do not discuss or address contractual indemnity provisions. And, critically, Kentucky law distinguishes between indemnification that arises out of the common law and indemnification that is "assumed contractually." *Crime Fighters Patrol*, 740 S.W.2d at 938. It is black letter law that "contracts are, of course, to be construed according to their terms." *Blue Diamond Coal Co. v. Robertson*, 243 S.W.2d 335, 336 (Ky. 1932). That axiom holds true in this context as Kentucky law provides that "[t]he nature of an indemnitor's liability under an indemnity contract shall be determined by the provisions of the indemnity agreement itself." *Thompson v. The Budd Co.*, 199 F.3d 799, 807 (6th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000) (quoting *United States Fidelity & Guar. Co. v. Napier Elec. & Const. Co., Inc.*, 571 S.W.2d 644, 646 (Ky. Ct. App. 1978)). Under *Napier*, parties may contractually provide for indemnification for, among other things, the costs incident to potential legal liability as well as for the legal liability itself. *See id.*

6

Here, the act, or rather the requirement to act, is set forth contractually. The Track Agreement compels ICG to "exercise reasonable care to keep the clearance area . . . free of obstruction that may endanger the safety of [CSX's] employees or interfere with the safe operation of engines or cars." [R. 31, Ex. A, ¶ 9.] Thus, ICG contractually assumed the primary responsibility for maintaining the track on its property. ICG further agreed to indemnify CSX for any and all claims stemming from ICG's failure to perform either of those covenants. [*See id.*]

Fox alleges that vegetation had overgrown the walkway adjacent to the track on ICG's property. As noted previously, the parties have accepted his allegations for purposes of the instant motions. It is therefore apparent, under that assumption, that ICG failed to comply with its contractual duty to keep that area free of obstruction and that its failure to do so was the proximate cause of Fox's alleged injuries. Further, ICG's failure to maintain the track triggers its obligation to indemnify CSX for "any and all claims" resulting from that failure. [*See id.*] Whether CSX could be found passively or actively negligent is irrelevant in light of the unambiguous and unconditional language of the Track Agreement. *See Weyerhaeuser Steamship Co. v. Nacirema Operating Co.*, 355 U.S. 563, 569 (1958) (noting that application of theories of active and passive negligence, or primary and secondary negligence, are inappropriate in contractual indemnity situations).

In a similar argument, ICG contends that the doctrine of acquiescence precludes CSX's ability to seek indemnification. That doctrine, adopted in certain jurisdictions, provides a defense to a claim for indemnification when the dangerous condition giving rise to the underlying liability was both known to and acquiesced in by the indemnitee. *Laiho v. Consol.*

7

*Rail Corp.*, 4 F. Supp. 2d 45, 52 (D. Mass. 1998) (citation omitted). The doctrine was "created by the common law of restitution, apart from any contract to indemnify," *Pennsylvania R.R. v. Erie Ave. Warehouse Co.*, 302 F.2d 843, 848 (3rd Cir. 1962), and is embodied in Section 95 of the Restatement of the Law of Restitution:

> Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels, which was created by the misconduct of the other or which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of such liability, unless after the discovery of the danger, he acquiesced in the continuation of the condition.

Restatement (First) of Restitution, § 95.

ICG asserts that CSX's continued use of the track despite its actual knowledge of the overgrowth of vegetation constitutes acquiescence and prevents its claim for indemnification. If CSX's claim were based on common law indemnity, ICG's argument would perhaps be more persuasive. Yet, ICG's contention again ignores the plain language of the Track Agreement. At Paragraph 9, the Agreement states that "[k]nowledge of or notice to [CSX] of a breach of the foregoing covenants and its continued operation of the trackage thereafter shall not constitute a waiver of either of them." [R. 31, Ex. A, ¶ 9.] That is, CSX's knowledge of ICG's failure to maintain the track and keep it free from obstruction does not relieve ICG of its contractual obligation to perform those acts. Nor does it preclude CSX from seeking indemnity from ICG for any and all claims resulting from ICG's failure to comply with those contractual provisions.

The Track Agreement thus provides that CSX's continued use of the track, even if it is aware of ICG's failure to keep it free from obstruction, does not preclude CSX from enforcing the terms of the Agreement, including the indemnity clause. The language of this provision is

express and its purpose is clear. ICG is contractually bound to indemnify CSX for any injuries resulting from ICG's failure to keep the sidetrack free from obstruction, regardless of CSX's knowledge about the condition of the track.[2]

While the doctrine of acquiescence may preclude common law indemnification in some circumstances, it "was not intended to supplant express agreements." *Id.* Rather, it was to be utilized "only insofar as it is consistent with the explicit language and the obvious purpose of the agreement." *Illinois Central Gulf Railroad Co. v. Crown Zellerbach Corp.*, 859 F.2d 386, 390 (5th Cir. 1988). The Track Agreement at issue here, however, expressly negates the doctrine of acquiescence. Because the doctrine of acquiescence is completely at odds with the explicit language and obvious purpose of the Agreement, it is inapplicable to this case. Indeed, the "doctrine is no defense when the intention of the indemnitor to obligate itself is expressed in

---

[2]It is worth noting that although there is an equal shares provision in the Track Agreement [*see* R. 31, Ex. A, ¶ 11], it is not applicable here. That clause provides that if any claim or liability arises "from the joint or concurring negligence of both parties . . . it shall be borne . . . equally." [*Id.*] Fox alleges that "all of his injuries were caused by the negligent breach of [CSX's non-delegable] duty [to provide him with a reasonably safe place to work]." [R. 1, ¶ 10.] And the only negligent act alleged was the failure to keep the track area free from obstruction, an obligation assumed contractually by ICG.

Importantly, indemnity agreements, like the one here, "are made in contemplation of the railroad's liability under the FELA . . . [and their] obvious purpose . . . is to provide for indemnification of the railroad when the industry's act or omission violates the railroad's nondelegable duty to furnish a safe place for its employees to work." *Burlington N., Inc.*, 671 F.2d at 284. And courts have held that equal shares provisions are not implicated by mere FELA liability. *See, e.g., Hendershot v. Consol. Rail Corp.*, 1998 WL 240495, *3 (S.D.N.Y. May 12, 1998) (to trigger equal shares provision of indemnity agreement, industry was required to show more than mere breach by railroad of its non-delegable duty under FELA) (citing *Illinois Cent. Gulf R.R. Co. v. Crown Zellerbach Corp.*, 859 F.2d 386, 390-91 (5th Cir. 1988) ("mere liability under FELA does not support the application of the equal-shares provision")); *Missouri Pac. R.R. Co. v. Int'l Paper Co.*, 618 F.2d 492, 497 (8th Cir. 1980) (affirming award of full indemnity to railroad where railroad's liability under sidetrack agreement arose solely from its non-delegable duty to provide a safe workplace)).

clear and unequivocal terms, as it is here." *Laiho*, 4 F. Supp. 2d at 53 (citation omitted).

Next, ICG argues that it cannot be found negligent in this case because it owed no duty to Fox. ICG's argument, however, is misplaced. This is because common law indemnity requires liability by the party against whom indemnity is sought, whereas contractual indemnity does not. *Thompson v. The Budd Co.*, 23 F. App'x 239, 242 (6th Cir. 2001) (*comparing Poole Truck Line, Inc. v. Comm.*, 892 S.W.2d 611, 614 (Ky. Ct. App. 1995) (holding in a common law indemnity case that "[b]oth indemnity and contribution depend upon liability by one or both parties to the original claimant who suffered the original loss") *with Fosson*, 309 S.W.2d at 178 (Ky. 1957) (holding that indemnity contracts in which one party agrees to indemnify another, even for those costs that are caused by the indemnitee's own negligence, are not against public policy)). Instead, as noted previously, an "indemnitor's liability under an indemnity contract shall be determined by the provisions of the indemnity agreement itself." *Napier*, 571 S.W.2d at 646 (Ky. Ct. App. 1978)).

Although ICG correctly observes that "[t]here can be no indemnity without liability," *Rice*, 920 F. Supp. at 736 (quotation omitted), the liability here is supplied by the Track Agreement. That contract imposed upon ICG the duty to keep the relevant section of track free from obstruction. Accepting Fox's allegations about the overgrowth of vegetation as true, ICG breached that duty. And because ICG's breach of that duty has exposed CSX to liability based on its non-delegable duty to provide a safe workplace, the indemnity provision of the Track Agreement is triggered. Thus, it is irrelevant whether ICG owed a separate, independent duty to Fox.

In sum, there is no genuine issue of material fact regarding the application or

10

enforceability of the Track Agreement in this case. The express terms of that agreement require ICG to indemnify CSX for any and all claims, including the instant ones, resulting from ICG's failure to maintain the track.

## III.

Accordingly, pursuant to Fed. R. Civ. P. 56(c) and for the foregoing reasons, it is hereby **ORDERED** as follows:

1. CSX's Motion for Summary Judgment [R. 30] is **GRANTED**; and,

2. ICG's Motion for Summary Judgment [R. 31] is **DENIED**.

This the 9th day of December, 2010.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge